# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FLORENCE MUSSAT, M.D. S.C., )
individually and on behalf of similarly )
situated persons, )
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs, ) No. 16-CV-07643
　　　　　　　　　　　　　　　　　　　)
　　v. ) Judge John J. Tharp, Jr.
　　　　　　　　　　　　　　　　　　　)
ENCLARITY, INC. and CORPORATE )
DOES 1-3. )
　　　　　　　　　　　　　　　　　　　
　　　　Defendants.

## MEMORANDUM OPINION AND ORDER

After receiving three form fax messages from Enclarity, Inc., the medical practice Florence Mussat, M.D., S.C. ("Mussat") sued Enclarity for violating the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227. Mussat, individually and on behalf of other similarly situated persons, alleges that the faxes were unsolicited advertisements prohibited by the statute. Enclarity maintains that the faxes were not advertisements and so were not prohibited by the TCPA. On that basis, Enclarity moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the complaint plausibly alleges that the faxes at issue were advertisements within the meaning of the TCPA, the Court denies Enclarity's motion to dismiss.

## BACKGROUND[1]

Mussat is an Illinois corporation and medical practice operating in Chicago, Illinois. Enclarity is a health care data and information solutions company that is owned by LexisNexis Risk Solutions ("LexisNexis"). LexisNexis provides services to its clients that monitor and

---

[1] On a motion to dismiss, the court accepts all well-pleaded facts in the complaint as true. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826-27 (7th Cir. 2015).

report health care provider information. According to LexisNexis, it has the largest, most accurate database of medical provider business and professional demographic data in the United States. As part of its business, its subsidiary Enclarity sends form faxes to healthcare providers requesting verification of the provider's contact information and secure fax number for communications containing patient protected health information ("PHI"), which by law must be kept secure.[2] Enclarity uses the faxes to obtain and verify the health care provider's information so that it can provide the information to its customers at a cost.

Mussat has a fax number, which is published on its website with a message "Do not Fax Advertisements Please." Am. Compl. ¶ 18, ECF No. 24. On February 11, 2015, Mussat received one of Enclarity's form faxes requesting verification of its contact information and secure fax number. The fax contained a LexisNexis logo at the top and a subject line stating "Re: Fax Number Verification for Delivery of Patient PHI." *Id.* Ex. A. The text of the fax stated:

> The purpose of this Fax Verification Request is to help preserve the privacy and security of your patients' Protected Health Information ("PHI"), as defined by the Health Insurance Portability and Accountability Act ("HIPPA"). LexisNexis is seeking your cooperation to verify or update your information. We validate and update the fax in our system so our clients can use them for clinical summaries, prescription renewals, and other sensitive communications. Verifying the practice address, phone number and your secure fax number(s) for this location will minimize the potential privacy risks that could arise from information sent to an unsecured location. As part of our effort to assure that the transmission of PHI, it

---

[2] The complaint actually alleges that Enclarity "and/or" one of three unidentified "Corporate Doe" defendants sent the faxes at issue. Am. Compl. ¶ 10, ECF No. 24. The complaint provides no information whatsoever regarding these Corporate Doe defendants or their possible connection to Enclarity or to LexisNexis. That sort of ambiguity in the pleading might require dismissal of the complaint—in light of this ambiguity, the complaint does not allege that Enclarity necessarily did anything—but Enclarity's motion is not premised on this point. Accordingly the Court deems any objection to the sufficiency of the pleadings in this regard to be waived and the references to the three unknown companies can be ignored for purposes of this motion. This remains an issue on which discovery may be taken, however, and it remains open to Enclarity to contest liability on the ground that some other entity sent the faxes at issue (if the facts so warrant).

2

> is vital to verify the information for Dr. Florence Mussat is accurate. This information will be verified once each year.

*Id.* The fax provides space for the recipient to confirm whether the contact information is correct and secure for PHI. The fax also directs the recipient to sign and fax the completed form back to (866) 699-0422. At the bottom of the fax, a phone number and website—www.enclarity.com/providerfaqs.php—are provided.

In response to this fax, on February 19, 2015, Mussat's counsel faxed a letter to the number provided asking that the sender cease and desist sending faxes to Dr. Florence Mussat. More than a year later, on May 25, 2016, Mussat received another form fax from Enclarity. On June 8, 2016, Mussat again received the form fax. In an effort to stop the faxes from being sent, Mussat visited the website listed at the bottom of the fax. The website on the fax led to the web address http://www.lexisnexis.com/risk/health-care/provider-form.aspx, which displays a page with a "provider form" and the option to check a box to "opt-out." *Id.* ¶¶ 24, 26, Ex. E. It is unknown if the opt-out option displayed within the provider form is, in fact, a means for stopping the form faxes. The webpage also includes a menu of links regarding multiple products that LexisNexis offers, including: clinical analytics; data management and services; fraud, waste, and abuse; identity management; and revenue cycle optimization. The website's link for revenue cycle optimization led Mussat to a description of a product that is similar to a product Mussat purchased from another company, DrChrono. Mussat faxed the "provider form" in an attempt to stop future faxes.

The phone number that is included at the bottom of Enclarity's form fax plays a pre-recorded message that directs the caller to http://www.lexisnexis.com/risk/health-care/. The message also states that the website "contains multiple products that LexisNexis offers." *Id.* ¶ 25.

To stop the unwanted form faxes, Mussat was required to view the LexisNexis website containing links to products and services. According to Mussat, the phone number and the website included on the form fax "promote the commercial availability" of Enclarity, Inc.'s services and the fax is part of Enclarity's "overall marketing plan to raise health care providers' awareness of LexisNexis' services." *Id.* ¶¶ 39-40.

## DISCUSSION

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need only provide a "short and plain statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in the plaintiff's favor. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016).[3]

---

[3] Enclarity argues that the Court should not look beyond the four corners of the fax itself to determine whether the fax at issue fails to meet the definition of "unsolicited advertisement" under the TCPA. When ruling on a motion to dismiss a TCPA claim, courts in this and other districts consider both the fax and the complaint's well-pleaded facts to determine whether the plaintiff has adequately stated a claim. *See Orrington v. Scion Dental, Inc.*, 17-CV-00884, 2017 WL 5569741, at *3-5 (N.D. Ill. Nov. 20, 2017) (finding that the fax, on its face, did not advertise goods or services, but holding that the complaint sufficiently stated a claim because it alleged that the fax was a pretext to advertising goods and services); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (finding

The sole issue presented by the present motion is whether the faxes sent by Enclarity to Mussat constitute "advertisements" within the meaning of the TCPA. The TCPA prohibits any person from using a fax machine to send "an unsolicited advertisement," unless certain statutory requirements are met. 47 U.S.C. § 227(b)(1)(C). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). It is unquestioned that the faxes were unsolicited, but were they advertisements?

Enclarity argues that the faxes do not "advertise the commercial availability or quality of any property, goods, or services," and instead "seek only to verify or validate location, practice, and contact information" about the recipient medical practice. Def.'s Memo. in Supp. of Mot. to Dismiss Am. Compl. 1, ECF No. 31. According to Enclarity, because the faxes do not promote or sell any product or service to the recipient, they do not satisfy the statute's requirements. Enclarity argues that the inclusion of its web address and phone number are not enough to convert the fax into an advertisement.

A fax need not make an overt sales pitch to its recipient for a TCPA claim to exist. *Green v. Time Ins. Co.*, 629 F. Supp. 2d 834, 837 (N.D. Ill. 2009). A fax may constitute an advertisement "even if the vast majority of its content has nothing to do with promoting a

---

that the fax did not indicate an intent to market products or services, but the complaint's allegations that the fax was part of the defendant's operations to market its goods or services was sufficient to state a claim); *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 13-15 (D.D.C. 2015) (looking beyond the face of the fax itself and considering the complaint's allegations to conclude that the plaintiff sufficiently alleged that the fax was an unsolicited advertisement). *See also Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 492 (W.D. Mich. 2015) ("the TCPA's text does not require a court to put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement"). The Court, therefore, will not limit its inquiry to the fax itself and instead will consider the fax and the complaint's well-pleaded facts.

service's availability or quality." *Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, 16-cv-8219, 2017 WL 2152429, at *2 (N.D. Ill. May 17, 2017) (citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 687 (7th Cir. 2013)). In *Turza*, the Seventh Circuit ruled that a newsletter-style fax that included mundane advice in 75% of the fax and the defendant's, name, address, logo, and specialties in the remaining 25% of the fax was an advertisement covered by the TCPA. 728 F.3d at 686-87. The court acknowledged that even though the fax may not have "touted the quality" of the defendant's services, it did declare their availability. *Id.* at 685. The court rejected the defendant's argument that his contact information was merely "incidental" to the rest of the fax, noting that "the statute does not ask whether a notice of availability is incidental to something else." *Id.* at 686.[4]

Courts have also held that a fax need not explicitly mention a commercially available product or service, or express an intent by the defendant to market its products or services if the fax was a "pretext" to marketing the defendant's goods and services. *See, e.g.*, *North Suburban Chiropractic Clinic, Ltd. v. Merck & Co., Inc.*, No. 13 C 3113, 2013 WL 5170754, at *4 (N.D. Ill. Sept. 13, 2013). For example, a fax may be a pretext to an advertisement if it promotes a free seminar where the defendant's products or services will be advertised. *See id.*; *Am.'s Health & Resource Ctr., Ltd. v. Promologics, Inc.*, 16 C 9281, 2017 WL 5001284, at *3 (N.D. Ill. Nov. 2, 2017); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 95-97

---

[4] In reaching this conclusion, the Seventh Circuit rejected a passage in the Federal Communications Commission's (FCC) 2006 Rules and Regulations Implementing the TCPA of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967 (May 3, 2006), (the "2006 Rules and Regulations") in which the agency stated that "an incidental advertisement" in an "informational communication" does not convert the entire communication into an advertisement. 728 F.3d at 687-88. The court held that the passage was "a species of untethered legislative history" that should be ignored because "informational communication" does not appear in the statute or the regulation. *Id.* at 688.

(2d Cir. 2017).[5] At the motion to dismiss stage, plausible allegations that the fax was used to further the defendant's commercial efforts or advance its marketing operations may suffice to state a claim that the fax was a pretext to an advertisement. In *Physicians Healthsource,* the court held that the complaint adequately stated a claim despite the fact that the fax at issue only promoted a free seminar and did not refer to commercially-available products or services. 847 F.3d at 95-97. The court found it was plausible that the fax had the commercial purpose of promoting the defendant's business because the complaint alleged that the free seminar was related to the defendant's business. *Id. See also Am.'s Health & Resource Ctr., Ltd.*, 2017 WL 5001284, at *3 (denying motion to dismiss TCPA claim where the complaint plausibly alleged that a fax promoting a free seminar was a pretext to an advertisement because the free seminar was used to further the defendants' commercial efforts); *North Suburban Chiropractic Clinic, Ltd.*, 2013 WL 5170754, at *4 (denying motion to dismiss TCPA claim because the plaintiff alleged that the defendant used the fax and the free seminars referenced in the fax as part of its work or operations to market its goods and services). In contrast, a conclusory allegation that the defendant "derived economic benefit" from the fax, without additional facts to support the assertion of pretext, will not suffice. *See Orrington v. Scion Dental, Inc.*, No. 17 C 00884, 2017 WL 2880900, at *4 (N.D. Ill. July 6, 2017).

The form fax at issue here, on its face, declares the commercial availability of LexisNexis' services. The fax states that LexisNexis validates and updates health care provider

---

[5] In such cases, courts have relied upon the FCC's 2006 Rules and Regulations, which state that "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." 71 Fed. Reg. 25967, 25973. The FCC observed that, "in many instances, free seminars serve as a pretext to advertise commercial products and services" and "free publications are often part of an overall marketing campaign" to sell goods. *Id.* The FCC also concluded that "any surveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules." *Id.*

contact information for its clients so that its clients can use the information for clinical summaries, prescription renewals, and other sensitive communications. Am. Compl. Ex. A, ECF No. 24. The fax's use of the word "client," which is another word for customer, indicates that LexisNexis provides the health care provider information for a fee—in other words, that its availability is commercial. The fax also states that LexisNexis verifies provider information once a year. *Id.* While the fax is not an "overt sales pitch," it does make clear that one can purchase from LexisNexis access to health care provider information that minimizes the potential for privacy risks because it is verified and updated on an annual basis. Under the Seventh Circuit's ruling in *Turza*, a fax like the one at issue here, which declares the availability of the defendant's services by listing those services and providing the defendant's contact information, may constitute an advertisement under the TCPA. 728 F.3d at 685. The fact that the fax also seeks to verify the recipient's contact information does not eliminate its utility as an advertisement.

Enclarity's motion therefore fails, but the Court notes as well its agreement with Mussat's alternative argument that the complaint also plausibly alleges that the Enclarity fax violated the TCPA because it served as a pretext to an advertisement. Mussat claims that after receiving three form faxes from Enclarity, the only way it could stop future unwanted faxes was to visit the website provided on the fax, where LexisNexis' products and services were offered. Mussat alleges that the form faxes were therefore part of an "overall marketing plan" to promote the availability of LexisNexis' services. Am. Compl. ¶ 40, ECF No. 24. The Court finds that these allegations are sufficient to allege that the fax was a pretext to an advertisement. *See Physicians Healthsource,* 847 F.3d at 95-97 (plausible allegation that free seminar referenced in defendant's fax was used to promote products and services was enough to state a claim under the TCPA). The allegations go beyond mere conclusory statements that the fax produced an economic

benefit to Enclarity and instead detail how the faxes caused Mussat to visit a website where products and services were offered for sale. Repeat faxing of a form that provides a website and a phone number but no other information on how to unsubscribe or opt-out from receiving the form would logically drive the recipient to call the phone number or visit the website. It is plausible that Enclarity used the form faxes as part of its marketing operations to get health care providers like Mussat to traffic the LexisNexis website, where its products and services were advertised.

Enclarity argues that the fax cannot be a pretext to an advertisement because it does not offer free goods or services. Citing to the FCC's 2006 Rules and Regulations, Enclarity asserts that this case "is not remotely like the 'pretext' to advertising circumstances outlined by the FCC." Def.'s Reply 8-9, ECF No. 39. While many of the TCPA cases alleging pretext claims involve faxes offering free services or products, federal courts have not explicitly imposed a limitation on what type of fax may serve as a pretext to an advertisement. According to one district court, "an otherwise benign fax may violate the TCPA, if it ultimately leads to the promotion of goods or services." *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239, 1242 (S.D. Fla. 2017). Another district court has held that faxes requesting that the recipient complete an online certification and training process were sufficiently alleged to be a pretext for commercial solicitation. *See Michael W. Kincaid DDS, Inc. v. Synchrony Fin.*, No. 2:16-cv-790, 2017 WL 2599224, at *5 (S.D. Ohio June 15, 2017). In *Synchrony*, the court also held that a fax reporting an outage on the defendant's website could have been a pretext to promote the defendant's services. *Id.* Similarly, the FCC's 2006 Rules and

Regulations do not explicitly limit pretext faxes to those which promote free goods or services.[6] The point of the pretext doctrine is that a fax that prompts a recipient to take action that necessarily exposes the recipient to advertising of the sender's goods or services falls within the ambit of the communications prohibited by the statute, even if that fax does not itself provide information about the commercial availability or quality of the sender's goods or services. Accordingly, the Court will not rule at this stage of the case that the Enclarity fax cannot be a pretext to an advertisement simply because it does not offer a free good or service. The complaint plausibly alleges that Enclarity's unsolicited faxes required Mussat to access a web site advertising Enclarity's services in order to stop the faxes; those allegations are sufficient, in the Court's view, to plausibly establish that the faxes sent to Mussat were pretexts to Enclarity's advertising.

Enclarity also argues that the fax does not promote the availability or quality of goods or services for sale *to the fax recipients*, suggesting that health care providers such as Mussat are not potential direct buyers of the commercially available information described in the fax. The complaint, however, does allege that on its website, LexisNexis sells services and products to health care providers. Mussat visited the website listed on the fax, and that website provided,

---

[6] District courts disagree on whether or not the 2006 Rules and Regulations are binding on them. In *Alpha Tech Pet, Inc. v. Lagasse, LLC*, the court held that, in light of the Seventh Circuit's ruling in *Turza*, *see supra* n.3, the 2006 Rules and Regulations were not binding. 205 F. Supp. 3d 970, 974-5, n.3 (N.D. Ill. 2016). In *Grind Lap Services, Inc. v. UBM LLC*, the court reached the opposite conclusion and held that despite the *Turza* ruling, final orders promulgated by the FCC are binding on the district court pursuant to the Administrative Orders Review Act (the "Hobbs Act"), 28 U.S.C. § 2342(1). No. 14 C 6448, 2015 WL 6955484, at *2-3 (N.D. Ill. Nov. 10, 2015). Here, the Court would reach the same conclusion regardless of whether or not the 2006 Rules and Regulations are considered binding. Neither the case law nor the 2006 Rules and Regulations require limiting pretext faxes to only those faxes that promote free goods and services.

among other things, a link to a product sold by LexisNexis that was similar to a product Mussat purchased from another company. Mussat, then, plausibly is a potential customer.

But even were that not so, the TCPA does not require that the fax recipient be a potential "direct buyer" of the goods or services promoted in the fax. *AL and PO Corp. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 01893, 2014 WL 6999593, at *3 (N.D. Ill. Dec. 10, 2014). The statute defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to ***any person***." 47 U.S.C. § 227(a)(5) (emphasis added). In *AL and PO Corporation*, the district court rejected the defendant's argument that the subject fax did not violate the TCPA because the recipient was only a potential intermediary and not the intended direct buyer. 2014 WL 6999593 at *3. The court looked to case law and the definition of advertising and concluded that advertising involves "calling to the attention of the public" something for sale. *Id.* "In no way is the audience restricted to a direct consumer of the publicized good or any other party." *Id.* See also *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 491 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015) (holding that the TCPA does not mandate "one degree of separation between buyer and seller for material to constitute an advertisement as a matter of law").

Enclarity maintains that this Court should follow an opinion from the Eastern District of Michigan in *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, which granted a motion to dismiss a TCPA claim based on the same Enclarity form fax at issue in this case. No. 16-13777, 2017 WL 783499 (E.D. Mich. Mar. 1, 2017). In *Fulton*, the court held that the fax did not satisfy the TCPA's definition of an "unsolicited advertisement." *Id.* at *3-4. The *Fulton* decision, however, is not binding on this Court. See *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 970

11

(7th Cir. 2012) (district court decisions are not authoritative, even in the rendering district, and other district judges may disagree). Furthermore, the Court respectfully disagrees with the findings on which the *Fulton* court based its ruling. In *Fulton*, the court held that "[n]othing mentioned in the [f]ax is available to be bought or sold." 2017 WL 783499 at *3. As explained above, this Court's review of the fax has led it to the opposite conclusion. *See supra* at 7-8. In addition, the *Fulton* court dismissed the plaintiff's pretext argument and declined to look beyond the four corners of the fax to determine whether or not the fax was an unsolicited advertisement. 2017 WL 783499 at *3-4. But this Court and other district courts have found that the plaintiff is not limited to the fax itself when alleging a claim under the TCPA. *See supra* at n.2. Therefore, the Court is not persuaded by the ruling in *Fulton*.

Nor is the Sixth Circuit's decision in *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.* "directly on-point," as Enclarity asserts. Def.'s Memo. in Supp. of Mot. to Dismiss Am. Compl. 10-11, ECF No. 31. In *Sandusky,* the Sixth Circuit affirmed the district court's decision at summary judgment that faxes from a pharmacy benefit manager to a health care provider were not "unsolicited advertisements" under the TCPA. 788 F.3d 218 (6th Cir. 2015). The court found that the faxes at issue called medications and the defendant's services to the attention of the fax recipient but there was no record evidence to show that the medications or the defendant's services were for sale by the defendant. *Id.* at 222. The *Sandusky* court further held that the evidence showed that the faxes merely informed the recipient of the drugs that its patients might prefer, based on the defendant's formulary services that were paid for and rendered to the defendant's clients. *Id.* The court found that the record showed the defendant had no interest whatsoever in soliciting business from the plaintiff. *Id.* Here, however, the Court does not have the benefit of any evidence to show that Enclarity had no interest in soliciting business

from Mussat or that Mussat could not be a potential client of Enclarity. To the contrary, information to which Mussat was exposed led to advertising for a product similar to one that Enclarity purchased from another company, suggesting that Mussat could be a potential Enclarity customer. The Sixth Circuit's decision in *Sandusky*, therefore, does not persuade this Court to dismiss Mussat's complaint.[7]

\*   \*   \*

For the reasons stated above, the Court denies Enclarity's motion to dismiss. Enclarity's answer is due March 19, 2018. A status hearing is set for March 27, 2018 at 9:00 a.m.

Date: March 5, 2018

John J. Tharp, Jr.
United States District Judge

---

[7] Other cases on which Enclarity relies are similarly distinguishable and unpersuasive. In *ARcare v. IMS Health, Inc.*, for example, the court held that a fax requesting the recipient to verify its contact information and secure fax number was a "non-commercial message" that fell outside the TCPA's ban on unsolicited advertisements., but that fax did not refer to any clients or customers as the Enclarity fax does. *Id.* at \*1. (The phone call at issue in *Alleman v. Yellowbook*, No. 12 cv 1300 DRH MPF, 2013 WL 4782217, at \*6 (S.D. Ill. Sept. 6, 2013), is distinguishable for the same reason.) Further, the *ARcare* court found that the complaint did not allege how any of the defendant's services were available for purchase by the fax recipient, but as previously noted, this Court and other district courts disagree that the fax recipient must be a potential direct customer of the sender. *See supra* 7. And in any event, Mussat's complaint does include allegations regarding how LexisNexis products and services were available for purchase by Mussat.